# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | Case No. **2:23-cv-1940** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TWENTY THOUSAND AND 00/100 DOLLARS ($20,000.00) IN UNITED STATES CURRENCY,** | : | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |
| | : | |
| | : | |
| **Defendant 1,** | : | |
| | : | |
| **and** | : | |
| | : | |
| **SIX THOUSAND AND 00/100 DOLLARS ($6,000.00) IN UNITED STATES CURRENCY,** | : | |
| | : | |
| | : | |
| **Defendant 2.** | : | |

Plaintiff, United States of America, by its undersigned counsel, alleges the following for its action against the defendants in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure.

## NATURE OF THE ACTION

1.      This is a civil action *in rem* brought to enforce 21 U.S.C. § 881(a)(6), which provides for the forfeiture to the United States of:

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## THE DEFENDANTS IN REM

2.       Defendant 1 is Twenty Thousand and 00/100 Dollars ($20,000.00) in United States Currency.   The Drug Enforcement Administration ("DEA") seized Defendant 1 on or about January 4, 2023, from Craig Montgomery's carry-on bag, following a consensual encounter with him at the John Glenn Columbus International Airport.   Defendant 1 has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

3.       Defendant 2 is Six Thousand and 00/100 Dollars ($6,000.00) in United States Currency.   The DEA seized Defendant 2 on or about January 4, 2023, from Craig Montgomery's wallet, following a consensual encounter with him at the John Glenn Columbus International Airport.   Defendant 2 has been deposited into the Seized Asset Deposit Fund, where it will remain during the pendency of this action.

## JURISDICTION AND VENUE

4.       Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendants under 21 U.S.C. § 881(a)(6).   This Court has subject matter jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.       This Court has *in rem* jurisdiction over the defendants under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio.

6.       Venue is proper in this district under 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture occurred in the Southern District of Ohio and under 28 U.S.C. § 1395 because the defendants were found in the Southern District of Ohio.

**BASIS FOR FORFEITURE**

7.      The defendants are subject to forfeiture under 21 U.S.C. § 881(a)(6) because they represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.

**FACTS**

8.      On or about January 3, 2023, members of the Columbus, Ohio Airport DEA Group at the John Glenn Columbus International Airport ("CMH") received information regarding the suspicious travel of an airline passenger identified as Craig Montgomery ("Montgomery").

a.      Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that persons engaged in the commercial interstate distribution of controlled substances frequently use CMH and the aircraft that arrive and depart there to transport the proceeds derived from the sale of controlled substances and funds to be used to purchase controlled substances in and out of Columbus.   Those proceeds and funds are usually in the form of United States currency.

b.      Members of the Columbus, Ohio Airport DEA Group, through their training and experience, know that persons engaged in the commercial interstate distribution of controlled substances frequently use couriers to transport controlled substances, proceeds from the sale of controlled substances, and funds to be used to purchase controlled substances in and out of Columbus.   CMH and the aircraft that arrive and depart there are relied upon as a means of sending and receiving

3

such couriers.

        c.     Members of the Columbus, Ohio Airport DEA Group are trained and experienced in investigating illegal drugs and currency couriers related to this illegal activity, and they have learned to observe and detect the behavior, characteristics, and other travel indicators which help them to distinguish suspected illegal drug and currency couriers from the normal, non-criminal traveling public.

        d.     Members of the Columbus, Ohio Airport DEA Group are trained and experienced and know that illegal drug and currency couriers often purchase airline tickets within 72 hours of travel to a known source area for illegal drugs like Las Vegas, Nevada, or to a known destination area for illegal drugs like Columbus, Ohio.

        e.     DEA Special Agent Jonathan Hanley ("SA Hanley"), DEA Task Force Officer Andrew D'Orazio ("TFO D'Orazio"), DEA Task Force Officer Eric Doyle ("TFO Doyle"), and DEA Task Force Officer Raul Melo ("TFO Melo") are members of the Columbus, Ohio Airport DEA Group.

9.     The investigators learned that on January 3, 2023, a one-way ticket was purchased for Montgomery to fly from Columbus, Ohio to Las Vegas, Nevada the next day — January 4, 2023 — via Spirit Airlines Flight 205.

10.     After receiving information about Montgomery's ticket purchase, investigators reviewed law enforcement databases and learned that Montgomery's criminal history includes activity related to controlled substances and that other law enforcement agencies previously noted links between Montgomery and suspected activity involving controlled substances. After reviewing this information, the investigators decided to speak to Montgomery about his travel.

11.     At approximately 2:40 p.m. on January 4, 2023, investigators observed as Montgomery arrive at the CMH and proceed through the CMH Transportation Security Administration's ("TSA") Checkpoint for CMH's Concourse B.

12.     After Montgomery cleared the TSA Checkpoint, SA Hanley along with TFO D'Orazio and TFO Melo approached Montgomery in a way as not to block his freedom of movement.   The investigators were in plain clothes with no weapons or badges displayed.

13.     The investigators noted that Montgomery was carrying a backpack style carry-on bag with him.

14.     The investigators identified themselves as law enforcement officers and asked Montgomery if he would speak with the officers.   Montgomery agreed to speak to the investigators.

15.     TFO D'Orazio asked Montgomery for the reason for his travel and why he had purchased a ticket the day before his flight.   Montgomery replied that he was going to Las Vegas to have fun and see some friends.   Montgomery did not explain the late ticket purchase.

16.     TFO D'Orazio then asked Montgomery if he was going to conduct any business while in Las Vegas.   Montgomery advised that he was not.

17.     While speaking to TFO D'Orazio, Montgomery took his wallet from his back pant's pocket, removed his driver's license, and offered it to TFO D'Orazio.   TFO D'Orazio observed that Montgomery's wallet was bulging, and, based upon his training and experience, noted that Montgomery appeared to have at large amount of currency in his wallet.

18.     TFO D'Orazio then asked Montgomery if he was carrying any controlled substances or large amounts of United States Currency.   Montgomery stated that he was not carrying any controlled substances but that he had approximately $20,000.00 in his carry-on

5

backpack.

19.     After hearing this, TFO D'Orazio asked Montgomery if he was planning to use the money to gamble.   Montgomery advised that he was not; that he wouldn't gamble that much money.

20.     TFO D'Orazio then requested and received consent for the investigators to search both Montgomery's person and his carry-on backpack.

21.     Upon searching Montgomery's backpack, TFO D'Orazio found two bank envelopes stored inside clothing held in the backpack.   TFO D'Orazio noted that each bank envelope held a large amount of United States Currency.

22.     After finding the currency, investigators asked Montgomery where the money had come from.   Montgomery did not answer the question.   TFO D'Orazio then asked Montgomery if the money was taken out of the bank.   Montgomery initially stated that it was, but when asked to provide proof of bank withdrawals, he said that it was money from his home.   He also advised that he received money from his renters.   When TFO D'Orazio asked if Montgomery received rent payments in cash, Montgomery advised that he gets paid via "Cash App."

23.     After seeing the money in Montgomery's carry-on backpack, TFO D'Orazio asked Montgomery why he was taking the money to Las Vegas if he wasn't planning to do any business or to gamble with it.   Montgomery did not answer TFO D'Orazio's question.

24.     While searching Montgomery's backpack, TFO D'Orazio also noted that Montgomery had paperwork for a rental car that was dated January 2, 2023, through January 4, 2023.   Upon finding this, TFO D'Orazio asked Montgomery if he had just arrived in the Columbus area on January 2nd.   Montgomery replied that he had just returned from a trip to Mexico.   When TFO D'Orazio asked why he had rented a car in Columbus if he was in Mexico,

Montgomery did not respond.

25.     At this time, TFO D'Orazio asked Montgomery how much money he was carrying on his person.   Montgomery advised that he had only about $2,000.00.   TFO D'Orazio then confirmed that he had consent to search Montgomery's pockets and located the bulk currency that had previously been seen in Montgomery's wallet.   TFO D'Orazio noted that it appeared to be significantly more than the $2,000.00 that Montgomery estimated.

26.     Based on this investigation and TFO D'Orazio's training and experience, the investigators suspected that Montgomery was involved in illegal activity related to controlled substances and that the currency in his carry-on backpack and wallet was related to this illegal activity.

27.     TFO D'Orazio advised Montgomery that the currency located in his carry-on backpack and wallet was being administratively seized as proceeds related to illegal activity related to controlled substances.   The investigators also advised Montgomery that his cellular telephone would be seized for further investigation.   The investigators took custody of the currency and cellular telephone and provided Montgomery with a custody receipt form for the property.

28.     Following their consensual encounter with Montgomery, the investigators returned to the DEA's airport office and requested assistance from Columbus Regional Airport Authority Police K-9 Officer Dale Beam ("Officer Beam") and K-9 "TRex," who are trained and certified in the State of Ohio to conduct K-9 sniffs related to the detection of controlled substances (drugs), to conduct K-9 sniffs at the DEA's airport office on boxes that contained the currency seized from Montgomery's backpack and wallet.

29.     The seized currency was placed in new United States Postal Service Priority Mail medium flat rate boxes ("USPS box") and sealed.   The K-9 sniff consisted of four separate K-9

sniffs as follows.

a.    Ten USPS medium flat rate boxes were placed in a circle in the DEA office. Three of the USPS boxes were empty, and seven contained shredded, circulated and un-circulated currency. Officer Beam and K-9 TRex entered the area, and Officer Beam gave K-9 TRex the command to search. K-9 TRex did not show a change in behavior in the room or on the ten USPS boxes. Officer Beam and K-9 TRex then left the area.

b.    The DEA officers replaced one of the USPS boxes with one of the USPS boxes that contained money seized from Montgomery. The location of the money was unknown to Officer Beam. Officer Beam and K-9 TRex returned to the area, and Officer Beam gave K-9 TRex the command to search. While searching, K-9 TRex showed a change of behavior on one of the USPS boxes, that is, his breathing quickened, and he stopped quickly at the USPS box. K-9 TRex then placed his front paws on top of the USPS box and began to scratch the USPS box, indicating a positive alert for the odor of drugs on the USPS box. The DEA officers advised Officer Beam that it was the USPS box containing money seized from Montgomery.

c.    After the first alert, the original ten USPS medium flat rate boxes were again placed in a circle in the DEA office. As before, three of the USPS boxes were empty, and seven contained shredded, circulated and un-circulated currency. Officer Beam and K-9 TRex entered the area, and Officer Beam gave K-9 TRex the command to search. K-9 TRex did not show a change in behavior in the room or on the ten USPS boxes. Officer Beam and K-9 TRex then left the

area.

> d. The DEA officers again entered the area and replaced one of the USPS boxes with the other USPS box that contained money seized from Montgomery. The location of the money was unknown to Officer Beam. Officer Beam and K-9 TRex returned to the area, and Officer Beam gave K-9 TRex the command to search. While searching, K-9 TRex showed a change of behavior on one of the USPS boxes, that is, his breathing quickened, and jumped at one of the USPS boxes, placing his front paws on top of the USPS box. K-9 TRex then began to scratch the USPS box, indicating a positive alert for the odor of drugs on the USPS box. The DEA officers advised Officer Beam that it was the USPS box containing money seized from Montgomery.

30. One of the K-9 sniffs described was a positive K-9 alert for drugs on the USPS box containing Defendant 1, $20,000.00 in United States Currency.

31. The other K-9 sniff described was a positive K-9 alert for drugs on the USPS box containing Defendant 2, $6,000.00 in United States Currency.

32. An official count of the United States currency seized from Montgomery's carry-on backpack revealed that it totaled $20,000.00 (Defendant 1):

| Denomination | Quantity | Total |
|---|---|---|
| $100 | 184 | $18,400.00 |
| $50 | 32 | $1,600.00 |
| $20 | 0 | $0.00 |
| $10 | 0 | $0.00 |
| $5 | 0 | $0.00 |
| $1 | 0 | $0.00 |
| | | $20,000.00 |

33.     An official count of the United States currency seized from Montgomery's wallet revealed that it totaled $6,000.00 (Defendant 2):

| Denomination | Quantity | Total |
|---|---|---|
| $100 | 5 | $500.00 |
| $50 | 70 | $3,500.00 |
| $20 | 100 | $2,000.00 |
| $10 | 0 | $0.00 |
| $5 | 0 | $0.00 |
| $1 | 0 | $0.00 |
| | | $6,000.00 |

34.     On or about January 17, 2023, investigators obtained a State of Ohio Search Warrant for the cellular telephone seized from Montgomery — a gray Apple iPhone associated with IMEI # 352871470546894.   Upon initial review of the contents of this cellular telephone, investigators observed several photographs of what appear to be bulk amount of marijuana. Investigators also found messages that, based on their training and experience, appear to be related to controlled substances.

35.     For example, a message sent to Montgomery on or about December 21, 2022, from "Tulum Friend," via the WhatsApp instant messaging service, outlines a list of controlled substances and their associated prices, and states:

> Menu Tulum 2023 – best quality only
>
> pure coke 2000
> tusi (exclusive) 2000
> molly 1500
> ketamine 1400
> xtc 500
> mushrooms 1000 3.5g
> Las 500
> Weed (ask for information)

36.     Finally, investigators received information from the Ohio Department of Taxation indicating that Montgomery did not file any personal or business State of Ohio tax returns claiming

income in 2019 through 2021.

37.     On March 17, 2023, the DEA received valid administrative claims from Montgomery in which he asserted an ownership interest in the defendants.   In his claims, Montgomery asserts that the seized currency belongs to him and that he is the owner of the seized currency.   No other information or documents were included in support of his administrative claims.

38.     Based on the foregoing facts, the United States asserts that the defendants, $20,000.00 in United States Currency (Defendant 1) and $6,000.00 in United States Currency (Defendant 2), represent property furnished or intended to be furnished in exchange for a controlled substance, represent proceeds traceable to such an exchange, or were used or intended to be used to facilitate any violation of 21 U.S.C. § 841 or a conspiracy to commit such offense, in violation of 21 U.S.C. § 846.   Therefore, the defendants are subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6).

## CLAIM FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that:

(a)     pursuant to Rule G(3)(b)(i), Supplemental Rules, the Clerk issue a warrant of arrest *in rem*, directing the United States to arrest and seize the defendants and to retain the same in its custody subject to further order of the Court;

(b)     the Court, pursuant to Rule G(4), Supplemental Rules, direct the United States to give notice to all persons and entities having an interest in the defendants to assert, in conformity with the law, a statement of any interest they may have, including notice by publication on the official government website, www.forfeiture.gov, for 30 consecutive days;

(c)     the forfeiture of the defendants to the United States be confirmed, enforced, and

ordered by the Court;

       (d)     the Court thereafter order the United States to dispose of the defendants as provided by law; and

       (e)     the Court award the United States all other relief to which it is entitled, including the costs of this action.

             Respectfully submitted,

             KENNETH L. PARKER
             United States Attorney

             s/William B. King II
             WILLIAM B. KING II (0094046)
             Assistant United States Attorney
             Attorney for Plaintiff
             221 East Fourth Street, Suite 400
             Cincinnati, Ohio 45202
             (513) 684-3711
             Bill.King@usdoj.gov

## **VERIFICATION**

I, Jonathan C. Hanley, hereby verify and declare under the penalty of perjury that I am a Special Agent with the Drug Enforcement Administration, that I have read the foregoing Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the complaint are true to my own knowledge, except those matters stated to be alleged on information and belief and as to those matters, I believe them to be true.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, and my investigation of this case.

I hereby verify and declare under the penalty of perjury that the foregoing is true and correct.

06/15/2023
Date

JONATHAN C. HANLEY, Special Agent
Drug Enforcement Administration

13